IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
JAN 14 2020
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiffs, <br><br> vs. <br><br> LEANNE MARTEN, Regional Forester, USFS Region One, U.S. FOREST SERVICE, and U.S. FISH & WILDLIFE SERVICE, <br><br> Defendants. | CV 18–87–M–DLC <br><br> ORDER |

Plaintiffs Native Ecosystems Council and Alliance for the Wild Rockies argue that the North Hebgen Project violates the Endangered Species Act ("ESA") and the Administrative Procedures Act ("APA") because the Forest Service was required to analyze the Project's effects on wolverine in a Biological Assessment ("BA") and receive concurrence from the Fish and Wildlife Service ("FWS") and failed to do so. All parties have extensively briefed the issues of whether the Forest Service adequately discharged its consultation obligations through its analysis of the Project's effects on wolverine in the in the Project's Environmental Assessment or by conducting a programmatic BA for the wolverine for which the

1

Forest Service received FWS concurrence. However, the threshold issue of whether the Forest Service was required to prepare a BA when the Project is not a "major construction activity" is not thoroughly briefed. This argument was raised by Defendant-Intervenor—and briefly, by the Forest Service—however, Plaintiffs did not respond until oral argument. At this juncture, the Court requires more information in order to decide this issue.

Section 7 of the ESA, from which the consultation and conference obligation arises, indicates that a BA is required for "any agency action" where a proposed or listed species "may be present" in the project area. 16 U.S.C. § 1536(c)(1). The regulations implementing section 7 explain that the action agency is "required" to "prepar[e]" a BA for federal actions that are "major construction activities." 50 C.F.R. § 402.12(b)(1). On its face, this describes a smaller subset of federal actions for which a BA is required.

At oral argument, Plaintiffs argued that the Court was bound by the broad language in the statute which mandates a BA for "any agency action," and to the extent the regulation at 402.12(b)(1) conflicts with the statute, the Court may disregard it. *See, e.g., Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006). Nevertheless, recognizing the Court's duty to interpret provisions of a text in a way that "renders them compatible, not contradictory," Antonin Scalia et al., *Reading Law*, 180

(explaining the harmonious-reading canon), Plaintiffs advanced a textual reading tying the language of the regulation to § 1536(c)(1)'s triggering date. To the extent Plaintiffs continue to hang their hat on this argument, the Court requests additional briefing on the subject.

Whether § 402.12(b)(1) constrains an agency's duty to prepare a BA under § 1536 is an unresolved question. *Swan View Coal. v. Weber*, 783 F. App'x 675, 678 n.1 (9th Cir. 2019) (unpublished) ("It may well be that the 'major construction activities' language is not a broad limitation on the applicability of the regulation but an explanation of how the regulation applies to such activities in particular. If so, then the regulation does not relieve agencies of the obligation to conduct a biological assessment for actions other than 'major construction activities.'"). While the majority of lower courts that have addressed the issue have concluded that an agency is only *required* to prepare a BA where a project is a "major construction activity", the analysis of the issue is often perfunctory. *See, e.g., Los Padres Forestwatch v. U.S. Forest Serv.*, 776 F. Supp. 2d 1042, 1045 (N.D. Cal. 2011); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 459 F. Supp. 2d 1102, 1129 (D.N.M. 2006), *aff'd in part, vacated in part, rev'd in part*, 565 F.3d 683 (10th Cir. 2009); *but see San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 874–75 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 11 F. Supp. 2d 529, 544

(D.V.I. 1998). While the agency's stance is relatively clear, 51 Fed. Reg. 19946, 19948 (1986) ("The biological assessment process begins when a Federal agency decides that its action is a major construction activity, as discussed in these regulations, or it decides that it will voluntarily prepare a biological assessment."), the Court recognizes Plaintiffs concern that there appears to be a conflict between the statute and regulation, at least as it pertains to projects that are not "major construction activities."

Given the uncertain nature of this question and its importance on the outcome as it pertains to the wolverine, the Court will provide each of the parties with an additional opportunity to weigh in. The parties might consider whether there is a way to read the statute and regulation in harmony? *See Sierra Club v. U.S. Army Corps of Engineers*, 295 F.3d 1209, 1213 (11th Cir. 2002). Whether the agency's interpretation is entitled to deference? *E.g.*, *Hawksbill Sea Turtle*, 11 F. Supp. 2d at 546. Or whether the agency's enactment of 402.12(b)(1) eviscerates the breadth of the duty imposed under § 1536(c)(1) in violation of Congress's purpose in enacting the ESA? Accordingly,

IT IS ORDERED that the parties shall submit additional briefing on the wolverine issue.

Plaintiffs opening brief shall be due February 5, 2020.

Federal Defendants and Defendant-Intervenors respective response briefs shall be due February 26, 2020.

Plaintiffs optional reply shall be due March 11, 2020.

The Court reserves the right to order an additional hearing on this limited issue after it has reviewed the briefs.

DATED this 14th day of January, 2020.

Dana L. Christensen, Chief Judge
United States District Court