IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

JUN 0 9 2020

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, ALLIANCE FOR THE WILD ROCKIES, | CV 18–87–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| LEANNE MARTEN, Regional Forester, USFS Region One, U.S. FOREST SERVICE, and U.S. FISH & WILDLIFE SERVICE, | |
| Defendants, | |
| and | |
| SUN MOUNTAIN LUMBER, INC., a Montana Corporation, | |
| Defendant-Intervenor. | |

In its May 26, 2020 Order ruling on the parties' cross-motions for summary judgment, the Court granted Federal Defendants' request to delay ruling on remedy in the event the court found a violation in the Forest Service's decision to implement the North Hebgen Multiple Resource Project ("the Project"), and to allow Federal Defendants the opportunity to provide additional briefing on whether

1

to remand with or without vacatur. (Doc. 85 at 41.) Purportedly due to workflow disruptions from the pandemic, Federal Defendants requested two extensions to file their brief. (Docs. 86, 88.) Now, instead of squarely addressing vacatur, Federal Defendants claim that no remedy is required because the agencies have subsequently corrected all deficiencies found in the Court's prior Order. (Doc. 90 at 2.) Along with their brief, Federal Defendants attach a supplemental information report ("SIR") recalculating elk hiding cover, a biological assessment ("BA") for wolverine, and a letter of concurrence from the Fish and Wildlife Service ("FWS"). (Docs. 90-1, 90-2, 90-3.) Plaintiffs claim the newly submitted work is inadequate because it does not comply with the National Environmental Policy Act ("NEPA"). (Doc. 92 at 7–8.) Procedurally, this case has become a mess.

Cognizant of its duty to construe the Federal Rules "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. Pro. 1, the Court will construe Federal Defendants' remedy brief as a motion under Rule 60 to dissolve the injunction.[1] Because the Court finds the work adequate, the Court will

---

[1] Having concluded that the Project violated various environmental laws, the appropriate remedy inevitably required remand, *see All. for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018), the only question was whether to remand with or without vacating the record of decision. Vacatur is the presumptive remedy, *id.*, however, where equity requires, a court may remand without vacatur upon weighing the "seriousness of the agency's errors against 'the disruptive consequences'" of delay, *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Attempting to analyze these factors when the

dissolve its injunction and allow the Project to proceed.

## Background

The Project is located within the Greater Yellowstone Ecosystem on the Hebgen Ranger District of the Custer-Gallatin National Forest, just north of West Yellowstone, Montana. (Doc. 85 at 2.) The Project is designed to minimize damage from fire, improve forest health, and decrease human-grizzly bear interactions at a popular campground. (*Id.*) Eighty percent of the Project occurs in wildland urban interface. (*Id.*)

Plaintiffs brought suit on May 15, 2018, alleging the following four violations of federal law: (1) the Forest Service failed to consult on lynx and lynx critical habitat for Amendment 51 to the Forest Plan; (2) the Forest Service failed to conduct a BA for the Project and to receive the FWS's concurrence; (2) the

---

Court has already seen the work required on remand is disingenuous. For example, it is difficult to construe the agency's failure to conduct a BA—which would ordinarily be considered a serious legal error, *Thomas v. Peterson*, 753 F.2d 754, 763 (9th Cir. 1985) *overruled on other grounds by Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir. 2015)—as anything other than harmless when the agency arrived at the same conclusion either way. Similarly, if the newly submitted work is adequate, then any delay, however minor, is unnecessarily disruptive to the Forest Service's timeline for Project implementation. Given the unique posture of this case, the Court believes it best to analyze Federal Defendants' brief as a motion under Rule 60. However, the Court must stress that its expedited review is not a reward for Federal Defendants' opportunistic tactics. The Court is troubled that counsel for Federal Defendants misrepresented the agencies' need for additional time, exploited the opportunity given to them to brief a narrow issue, and put Plaintiffs in the position of responding to the adequacy of a substantive issue under a strict word count—a task Plaintiffs accomplished, admirably. Finding no unfairness here, the Court will resolve this issue as efficiently as possible. In the future, the Court will be increasingly weary of granting counsel's requests that threaten the orderly adjudication of cases before it.

3

Forest Service erroneously calculated elk hiding cover; and (3) the Forest Service failed to analyze the Project in an environmental impact statement. (Docs. 1, 41.) Plaintiffs then moved for a preliminary injunction, which this Court granted upon finding that there was a likelihood of success on the merits of Plaintiffs' lynx consultation claim and that irreparable injury was likely to follow in the absence of such an injunction. *Native Ecosystems Council v. Marten*, 334 F. Supp. 3d 1124, 1133 (D. Mont. 2018).

Then, on summary judgment, Plaintiffs ultimately conceded that its lynx consultation claim was rendered moot by the agencies' subsequent programmatic analysis and consultation of Amendment 51, (Doc. 85 at 9), yet the Project remained subject to the injunction throughout this litigation. In its Order ruling on the parties' cross-motions for summary judgment, the Court held that the Forest Service had violated the Endangered Species Act ("ESA") and the Administrative Procedures Act ("APA") by failing to complete a BA for wolverine and violated the National Forest Management Act ("NFMA") and APA with its calculation of elk hiding cover. (*Id.* at 41.) Instead of vacating the record of decision in that Order, the Court granted Federal Defendants' request to provide additional briefing on the appropriate remedy and imposed a supplemental briefing schedule. (*Id.*) After a five-week extension, Federal Defendants submitted their brief along with a now-completed BA, a letter of concurrence from the FWS, and a SIR with a

4

revised calculation of elk hiding cover. (Docs. 90-1, 90-2, 90-3.) The Court must now decide whether, as a result of the additional work performed by the agencies, the injunction may be lifted.

## Discussion

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). A significant change in fact occurs when a party demonstrates its compliance with a court's prior order. *Id.*

### A. The Elk Issue

The Court determined that the Project violated NFMA and APA because the Forest Service failed to use the entire elk analysis unit as the denominator to determine whether the Project complied with the Forest Plan's two-thirds density standard. (Doc. 85 at 33.) The Forest Service subsequently recalculated post-treatment elk hiding cover in the SIR. (Doc. 90-1 at 2.) As with the old calculations, the new calculations demonstrate that the Project amply complies with the Forest Plan's two-thirds standard and reaches substantially similar results.[2] Plaintiffs do not object to the content of the SIR. Instead, they argue that

---

[2] For example, post treatment coverage under the old method of calculation resulted in 93% dense hiding cover in the Buffalo Horn elk analysis unit ("EAU"), 88% in Cabin Creek EAU, and 96% in Henry's Mountain EAU. Under the new method, post treatment coverage will result

5

the Forest Service must present the new calculations in a supplemental EA. (Doc. 92 at 5.)

Although Plaintiffs are correct that non-NEPA documents cannot be used to correct errors in the original NEPA process, *Idaho Sporting Congress v. Alexander*, 222 F.3d 562, 566–67 (9th Cir. 2000), the Court must also take "due account" of the harmless error rule, *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992) (citing 5 U.S.C. § 706). The error here is exceedingly de minimis—in two of the elk analysis units it amounts to a difference in fractions of a percentage. Moreover, the Forest Service explains that because the new method arrives at substantially similar results, using the entire elk analysis unit as the denominator does not cause "any other changes to the site-specific analysis completed for the North Hebgen Project." (Doc. 90-1 at 1.) Because the analysis of the Project's impacts on hiding cover remains fully intact despite the very minor change in percentage, it does not make sense to require the agency to release a supplemental draft EA for public comment and then issue a new decision notice and finding of no significant impact. The error here did not "prevent proper, thorough, and public evaluation of the environmental impact of the Project," *Lands Council v. Powell*, 395 F.3d 1019, 1037 n.25 (9th Cir. 2004), and is therefore

---

in 93.6% for Buffalo Horn EAU, 87.2% for Cabin Creek EAU, and 94.6% for Henry's Mountain EAU. (Doc. 90-1 at 2.)

6

harmless. The Court will not require the Forest Service to issue a supplemental draft EA on this basis.

**B. Wolverine BA**

Plaintiffs assert that the wolverine BA is inadequate because it asserts an erroneous legal standard, "cites only the 2014 programmatic BA and 2013 proposed rule in support" and therefore fails to use the best available science, and is procedurally improper because the Forest Service did not submit the BA in a supplemental draft EA. (Doc. 92 at 8–9.)

As an initial matter, the BA is not legally inadequate. Although the Court agrees with Plaintiffs that it is curious that the Forest Service continues to tout that no BA is required for proposed species despite the Court's order expressly ruling to the contrary, the BA is not inadequate for continuing to toe the company line. The point of a BA is to rely on the agency's scientific expertise not its legal insight.

Plaintiffs next assert that the BA is deficient because it cites only the 2014 programmatic wolverine BA and 2013 proposed rule and thus fails to use the best available science. (*Id.* at 9.) Plaintiffs assert that the "BA does not disclose the threat of the extremely small effective population size, does not disclose how many reproducing females could be impacted by the Project, and does not disclose any kind of threshold for safety in terms of the number of reproducing females that can

7

be negatively impacted before the effective population reaches a point of no return." (*Id.* at 10.)

Although the BA relies heavily on the 2014 programmatic BA and related science, the BA does not exclusively cite these materials. (*See* Doc. 90-2 at 13, 14, 17.) Nor is it improper for the BA to rely in part on the 2013 proposed rule or the 2014 programmatic BA, as the FWS affirmed its prior concurrence of that BA in 2016 after the FWS's 2014 withdrawal of the 2013 proposed rule and this Court's vacatur. *See Defs. of Wildlife v. Jewell*, 176 F. Supp. 3d 975 (D. Mont. 2016).

Plaintiffs complain that the BA does "not disclose the threat of the extremely small effective population size," but this is because, as the Forest Service explains, "no systematic population census exists over the entire current range of wolverines in the contiguous United States, so the current population level and trends are not known with any certainty." (*Id.* at 12.) However, this uncertainty does not stop the BA from discussing the impacts of the Project on fragile population segments. For example, the BA notes the importance of habitat connectivity to the species long-term survival. (*Id.* at 13.) The BA also notes that human disturbance in occupied wolverine habitat, such as that associated with forest treatment activities, can affect wolverine's habitat use. (*Id.* at 14.) Nevertheless, the BA does not find that the forest treatment activities contemplated in the Project pose a significant threat to the wolverine's survival because the Project will not cause a significant

8

disruption to the most important kinds of habitat, maternal and primary habitat. (*Id.* at 16.) Therefore, the BA concludes that the Project activities will not jeopardize wolverine despite the small population size. (*See id.* at 15–17.)

Similarly, it is not fair to say that the BA does not disclose how many reproducing females the Project is expected to affect. Again, the Forest Service is unable, not unwilling, to speak about the population size with any precision. And while the BA acknowledges the importance of genetic diversity, the Project is not anticipated to interfere with reproduction because "wolverine have been documented to persist and reproduce in areas with high levels of human use and disturbance." (*Id.* at 17 (citing Heinemeyer et al. 2019).) Nor is the Forest Service required to proscribe a population threshold, particularly when the BA explains the relatively insignificant effect the Project (and its cumulative effects) are expected to have on maternal and primary habitat. The BA provides a thorough analysis of the Project's effects on wolverine in support of its conclusion that the Project will "not jeopardize the continued existence of the wolverine." (*Id.* at 1.)

Having concluded the BA is adequate, the Court can find no authority to support Plaintiffs' general contention that post-decisional ESA consultation must be presented in supplemental NEPA form when the agency's receipt of FWS's concurrence is not a "major federal action significantly affecting the quality of the human environment." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d

9

581, 646 (9th Cir. 2014) (holding only that an agency's adoption of a *biological opinion* is a "major federal action significantly affecting the quality of the human environment" such that the action agency is required to release subsequently prepared ESA documents in a supplemental EIS). Although the federal regulations indicates that "[w]here the consultation or conference has been consolidated with the interagency cooperation procedures required by other statutes such as NEPA or FWCA, the results should be included in the documents required by those statutes," 50 C.F.R. § 402.06, this regulation does not necessarily speak to the circumstances here, post-decisional ESA compliance. Although the Court is well-aware of NEPA's purpose to facilitate informed decision-making, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348–49 (1989), the Court is likewise mindful not to interpret NEPA in a way that renders it merely an "obstructionist tactic," *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1090 (9th Cir. 2014). Requiring the Forest Service to submit its post-decisional wolverine BA in a supplemental draft EA—when the original EA already concluded that the Project does not jeopardize wolverine—does not serve any purpose under NEPA. This is not to say that the agency's initial failure to prepare a wolverine BA was not a significant error. This is simply an application of commonsense. In the absence of any authority that expressly requires the Forest Service to resubmit its BA pursuant to NEPA's procedures *under these circumstances*, the Court will not

remand the Project to the agency without some indication of a public value served by that decision.

The Court now concludes that the SIR and BA are adequate. The Forest Service has corrected the errors found in the Court's Order. This change in material facts supports amending the Court's prior Order under Rule 60. The Court will not remand and lifts its injunction allowing the North Hebgen Project to go forward.

IT IS ORDERED that Defendants' Rule 60 Motion (Doc. 90) is GRANTED. The Forest Service has now fully complied with the Court's Order (Doc. 85).

IT IS FURTHER ORDERED that the Court's injunction (Doc. 27) is lifted and the Project may go forward.

DATED this 9th day of June, 2020.

Dana L. Christensen, District Judge
United States District Court