Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Kristine Akland
AKLAND LAW FIRM, PLLC
PO Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, et al.<br>        Plaintiffs,<br>vs.<br><br>LEANNE MARTEN, et al,<br>        Defendants, and<br><br>SUN MOUNTAIN LUMBER,<br>        Defendant-Intervenor. | CV-18-87-M-DLC<br><br>BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND OTHER EXPENSES |

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Plaintiffs quality for an award of attorneys' fees under the ESA. . . . . . . . 1

        1.  Plaintiffs are prevailing parties regarding their programmatic ESA consultation claim for lynx. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.  Plaintiffs are prevailing parties regarding their site-specific ESA consultation claim for wolverine. . . . . . . . . . . . . . . . . . . . . . 4

        3.  All claims are related because they share a common course of conduct; therefore, all claims are compensable. . . . . . . . . . . . 7

    B.  Although an EAJA analysis is unnecessary in this case, Plaintiffs also qualify for an award of attorneys' fees under EAJA. . . . . . . . . . . . . . 9

        1.  Plaintiffs are eligible prevailing parties. . . . . . . . . . . . . . . . . . . 12

        2.  The government's position was not substantially justified. . . . . . . 13

        3.  There are no special circumstances here that would render an award unjust; instead, a fee award is consistent with the policy behind EAJA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.  Plaintiffs' requested rates are reasonable. . . . . . . . . . . . . . . . . . . . . . 15

    D. Plaintiffs' requested hours are reasonable. . . . . . . . . . . . . . . . . . . . . . 21

E.  Others costs and expenses should be awarded. . . . . . . . . . . . . . . . . . . . 25

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

TABLE OF AUTHORITIES

CASES

*Alliance for the Wild Rockies v. Savage,*

   2019 WL 3293425 (D. Mont. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*All. for Wild Rockies v. Krueger,* 2014 WL 46498 (D. Mont. 2014) . . . . . . 23, 24

*Ardestani v. I.N.S.,* 502 U.S. 129 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human*

   *Res.,* 532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*City of Burlington v. Dague,* 505 U.S. 557 (1992) . . . . . . . . . . . . . . . . . . . . . . 16

*City of Riverside v. Rivera,* 477 U.S. 561 (1985) . . . . . . . . . . . . . . . . 16, 22, 23, 24

*Comm'r, I.N.S. v. Jean,* 496 U.S. 154 (1990) . . . . . . . . . . . . . . . 10, 11, 15, 20, 21

*Federation of Fly Fishers v. Daly,* 200 F.Supp.2d 1181 (N.D. Cal.2002) . . . . . . . 26

*Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 24

*Goos v. National Ass'n of Realtors,* 68 F.3d 1380 (D.C. Cir. 1995) . . . . . . . . . . . 21

*Graham v. Connor,* 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 22

*Greenpeace v. Stewart,* 2020 WL 2465321 (9th Cir. 2020) . . . . . . . . . . . 8, 9, 20, 22

*Grove v. Wells Fargo Financial,* 606 F.3d 577 (9th Cir. 2010) . . . . . . . . . . . . . . 25

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . 16, 20, 24

*Higher Taste, Inc. v. City of Tacoma,* 717 F.3d 712 (9th Cir. 2013) . . . . . . . . . . . 3

*Ibrahim v. U.S. Dep't of Homeland Sec.,* 912 F.3d 1147 (9th Cir. 2019) . . . . passim

*Li v. Keisler,* 505 F.3d 913 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Love v. Reilly,* 924 F.2d 1492 (9th Cir. 1991) . . . . . . . . . . . . . . 11, 13, 15, 19, 24

*Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . 21

*Native Ecosystems Council v. Krueger,*

    2019 WL 1489839 (D. Mont. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 23

*Natural Resources Defense Council v. Babbitt,*

    1994 WL 361811 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Natural Resources Defense Council v. EPA,* 703 F.2d 700 (3rd Cir. 1983) . . . . . . 13

*Oregon Nat. Desert Ass'n v. Vilsack,* 2013 WL 3348428 (D. Or. 2013) . . . . . . . . . 9

*Perkins v. Mobile Housing Board,* 847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . 21

*Pollinator Stewardship Council v. EPA,* 2017 WL 3096105 (9th Cir. 2017) . . . . . . 8

*Ruckelshaus v. Sierra Club,* 463 U.S. 680 (1983) . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*S. Yuba River Citizens League v NMFS,*

    2012 WL 1038131 (E.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

*Sullivan v. Hudson,* 490 U.S. 877 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thomas v. Peterson,* 841 F.2d 332 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 11, 15

*Vogel v. Harbor Plaza Ctr., LLC,* 893 F.3d 1152 (9th Cir. 2018) . . . . . . . . . . 2, 12

*Watson v. Riverside*, 300 F.3d 1092 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 3

*Wood v Burwell*, 837 F.3d 969 (9th Cir.2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Woods v. Graphics Communications,* 925 F.2d 1195 (9th Cir. 1991) . . . . . . . . . . 21

STATUTES

16 U.S.C. § 1536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16 U.S.C. § 1540 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11,12

INDEX OF EXHIBITS

Declaration of Michael Garrity (June 15, 2020)

Declaration of Rebecca K. Smith (June 15, 2020)

Declaration of Timothy M. Bechtold (June 15, 2020)

Declaration of Kristine M. Akland (June 15, 2020)

## I.  INTRODUCTION

Plaintiffs Native Ecosystems Council and Alliance for the Wild Rockies hereby file this  motion for attorneys' fees and other expenses under the Endangered Species Act (ESA) fee provision and/or Equal Access to Justice Act (EAJA).  16 U.S.C. § 1540(g)(4); 28 U.S.C. § 2412(d).   As discussed below, Plaintiffs' request for attorneys' fees under the ESA and EAJA is reasonable because an award is appropriate under the ESA, and/or (1) Plaintiff is an eligible and prevailing party under EAJA, (2) Defendants' position was not substantially justified, and (3) no special circumstances make an award unjust.  Under either statute, the requested rates are reasonable and the requested hours are reasonable.

## II.  ARGUMENT

Plaintiffs move for costs including attorney fees pursuant to the ESA, which authorizes an award of a plaintiff's litigation costs, including attorneys' fees, if the court determines such an award is "appropriate."  16 U.S.C. § 1540(g)(4). Alternatively, or in addition, Plaintiffs move for fees and other expenses under EAJA, which authorizes an award of attorneys' fees and other expenses for a "prevailing party."  28 U.S.C. § 2412 (d)(1).

**A.  Plaintiffs quality for an award of attorneys' fees under the ESA.**

The ESA authorizes the "award [of] costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such

award is appropriate."  16 U.S.C. § 1540(g)(4).  The term "whenever . . .
appropriate" requires "some degree of success on the merits,"  though it is a lesser
standard than "prevailing party."  *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694
(1983) (addressing the same term "whenever . . . appropriate" in a different statute).
As the Supreme Court explained in *Ruckelshaus*: "By using the term "appropriate"
instead of "prevailing party," the language "was meant to expand the class of
parties eligible for fee awards . . . ."  *Id*. at 688.

In this case, fees are "appropriate" under the ESA because Plaintiffs meet the
higher threshold of "prevailing party."  "Prevailing party" is a "legal term of art."
*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human
Res.*, 532 U.S. 598, 603 (2001).  "[A] plaintiff [must] receive at least some relief on
the merits of [its] claim before [it] can be said to prevail . . . ."  *Id*.  The Supreme
Court holds that receipt of an "enforceable judgment[] on the merits" is one of the
ways that a plaintiff may qualify as a prevailing party.  *Id* at 604.

Thus, the Ninth Circuit holds that a "[p]laintiff is indisputably a 'prevailing
party'" if it "has secured an 'enforceable judgment[ ] on the merits.'" *Vogel v.
Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)(quoting
*Buckhannon*, 532 U.S. at 603–04).  Furthermore, the Ninth Circuit holds that
"when a plaintiff wins a preliminary injunction and the case is rendered moot before
final judgment, either by the passage of time or other circumstances beyond the

parties' control, the plaintiff is a prevailing party eligible for a fee award. . . ."

*Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715–19 (9th Cir. 2013).

Likewise, in *Watson v. Riverside*, the Ninth Circuit found:

> Nearly two years after the preliminary injunction issued, the district court granted summary judgment in favor of the defendants on all issues except one. It found a triable issue relating to Watson's claim for injunctive relief based on an alleged violation of due process. By that time, however, the administrative hearing had long since come and gone. The parties agreed that the claim for permanent injunctive relief had become moot.

300 F.3d 1092, 1094-96 (9th Cir. 2002).

In this case, as discussed below, Plaintiffs satisfy the prevailing party standard for both of their ESA claims. Additionally, fees for all claims should be awarded because all claims share a common course of conduct – the North Hebgen Project and the Gallatin Forest Plan.

### 1.  Plaintiffs are prevailing parties regarding their programmatic ESA consultation claim for lynx.

Regarding the programmatic ESA consultation claim for Amendment 51, this Court granted a preliminary injunction in Plaintiffs' favor on this claim, Doc. 17 at 16; the claim was ultimately rendered moot by new consultation, *see* Doc. 93 at 4; and the injunctive relief remained in place for almost two years until this Court granted Defendants' implicit Rule 60 motion and dissolved the injunction, Doc. 93 at 11. Thus, the facts of this case are similar to *Watson* because Plaintiffs obtained

a preliminary injunction that lasted almost two years, although the claim on which

the injunction was based was ultimately moot.  897 F.3d at 1031 n.8.  Thus, as in

*Watson*, here Plaintiffs received the precise relief requested for its programmatic

ESA claim until its claim became moot.  Therefore, Plaintiffs have "prevailing

party" status on their programmatic ESA consultation claim.

      In *Alliance for the Wild Rockies v. Savage*, this Court addressed a similar

issue:

> The Forest Service recognizes that preliminary injunctive relief may be
> grounds for classifying a litigant as a prevailing party. []. . . . at
> minimum—the Court determined that Alliance raised "serious
> questions going to the merits." []. Thus . . . the Court must conclude
> that the Ninth Circuit found Alliance's ESA claim to be "potentially
> meritorious." []
> . . .
> As a legal matter, a "prevailing party" need not show causation. [].
> And, more practically speaking, the preliminary injunction did, in fact,
> cause the agencies to reconsult prior to proceeding with the Project
> because the injunction delayed the Project. . . . Alliance has
> demonstrated that it was the prevailing party as to its lynx ESA claim.

2019 WL 3293425, at *4 (D. Mont. 2019)(internal citations omitted). The same is

true in this case:  Plaintiffs have "demonstrated that [they were] the prevailing party

as to [their] lynx ESA claim."  *See id.*

## 2.  Plaintiffs are prevailing parties regarding their site-specific ESA consultation claim for wolverine.

      Furthermore, regarding the site-specific ESA consultation claim for

wolverine, this Court granted summary judgment in Plaintiffs' favor on this claim,

finding that "[t]he Forest Service violated the ESA and APA by failing to complete a BA for wolverine . . . ." Doc. 85 at 41.  This Court first addressed the BA requirement in general and held: "That Defendants struggle to provide a compelling textual interpretation that supports the agency's view is unsurprising, given that the statute governing the preparation of a BA is straightforward and clear. . . .The plain language of the statute itself requires a BA . . . ." Doc. 85 at 16.  Thus, the Court found "no support for Defendants argument that the statute is ambiguous under the first step of the *Chevron* framework.  Congress's meaning, as derived from the text, is clear. The Court is therefore bound to follow the statute without regard to agency's interpretation." Doc. 85 at 22.

In addition to finding Defendants' position to be contrary to the plain language of the statute, the Court also found that Defendants' position was contrary to Ninth Circuit precedent and "structurally inconsistent with the purpose of the ESA," and "undermines the consultation purpose of Section 7 . . . ." Doc. 85 at 16-17, 19.  Thus, the Court held that it "is unable to reconcile the agency's interpretation of the regulation with the purpose of the ESA or a textual reading of the statute." Doc. 85 at 19.

In addition to rejecting Defendants' general arguments about the statutory requirements, the Court also rejected Defendants' specific arguments about this particular case:

> The programmatic and site-specific documents each contain a fatal
> defect. The programmatic BA is insufficient to meet the Forest
> Service's obligation to address the "direct and indirect effects of an
> action on the species ... together with the effects of other activities that
> are interrelated or interdependent with that action," 50 C.F.R. §
> 402.02, because it is too general. The site-specific analysis
> contained in the EA and Wildlife Report, while tailored to the Project,
> did not fulfill the agency's consultation obligationsbecause it did not
> receive FWS concurrence.
> . . .
> Even assuming that the minimal analysis contained in the various
> site-specific documents satisfied the Forest Service's obligation to
> prepare a BA, its consultation obligations are still outstanding. A
> determination that a project "may affect" a listed species requires
> FWS's concurrence. 50 C.F.R. §§ 402.14(a), 402.12(a). The Forest
> Service's failure to obtain such concurrence is arbitrary and
> capricious.

Doc. 85 at 23-25.  In response to this Summary Judgment Order, the Forest

Service prepared a BA and received FWS concurrence.  *See* Doc. 93.

In *Wood v Burwell*, the Ninth Circuit ordered remand without vacatur, but

it nonetheless held that the plaintiffs had obtained "a judicially-sanctioned material

alteration in the parties' relationship because 'the defendants were required to do

something directly benefitting the plaintiff[ ] that they otherwise would not have had

to do.'"  837 F.3d 969, 973–74 (9th Cir.2016)(citations omitted).  Therefore, the

plaintiff satisfied the prevailing party standard and was entitled to attorney fees.  *Id.*

Likewise, in this case, although the Court did not vacate the Project decision, its

Summary Judgment Order required the Forest Service to prepare a BA and receive

a concurrence from FWS before moving forward with the Project.  Doc. 85 at 23-

25.  Until the Summary Judgment Order, the agencies steadfastly refused to comply

with that procedure.  Thus, the Order was "a judicially-sanctioned material

alteration in the parties' relationship because 'the defendants were required to do

something directly benefitting the plaintiff[ ] that they otherwise would not have had

to do.'" *Wood*, 837 F.3d at 973–74.  For this reason, Plaintiffs are prevailing

parties on their site-specific ESA consultation claim for wolverine.

In summary, because the ESA's "whenever appropriate" standard is a *lesser*

standard than the "prevailing party" standard, and Plaintiffs nonetheless meet the

prevailing party standard for both of their ESA claims in this case, attorney fees are

appropriate under the ESA in this case.  *See Ruckelshaus,* 463 U.S. at 688.

### 3.  All claims are related because they share a common course of conduct; therefore, all claims are compensable.

The Ninth Circuit issued an *en banc* opinion last year clarifying that even if a

party prevails on only one claim, it is nonetheless entitled to fees for work on all

claims that arose from the same course of conduct: "We do not require

commonality of both facts and law to conclude that claims are related. [].  Rather

the focus is to be on whether the unsuccessful and successful claims arose out of

the same course of conduct. . . . The fact that one claim or theory is eventually

determined to be true does not mean that the claims were unrelated to one another."

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174-76 (9th Cir.

2019)(en banc)(internal quotation marks omitted), *cert. denied* 2019 WL 5150733 (U.S. Oct. 15, 2019).

Accordingly, in this case, because all of Plaintiffs' claims arose from the same course of conduct – the Gallatin Forest Plan and the North Hebgen Project – Plaintiffs should be compensated for all of their claims even though some claims were brought under different legal theories. *See Ibrahim*, 912 F.3d at 1174-76. As this Court recently held in *Savage*: "all of Alliance's claims challenged the same action by the Forest Service, and they are accordingly sufficiently related to one another for a full award." 2019 WL 3293425, at *6.

As the Ninth Circuit Appellate Commissioner recently held, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace v. Stewart*, 2020 WL 2465321, at *8 (9th Cir. 2020)(citation omitted); *see also Pollinator Stewardship Council v. EPA*, 2017 WL 3096105, at *8 (9th Cir.2017). In other words – how would a reasonable attorney act during litigation? This is similar to the reasonable officer standard in civil rights cases – 'reasonableness' . . . must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Therefore, in the attorney fee context, if counsel reasonably undertook a task during litigation, the time expended on that task is

8

compensable, even if "the 20/20 vision of hindsight" now shows that counsel was

ultimately unsuccessful.  *See Graham*, 490 U.S. at 396; *Greenpeace*, 2020 WL

2465321, at *8.

Because fees for all of Plaintiffs' claims may be awarded under the ESA

"whenever appropriate" standard in conjunction with the *Ibrahim* "common course

of conduct" test, there is no need to conduct a further analysis under EAJA:

"EAJA's fee provisions are subordinated to those of the ESA and only if a fee is

not authorized under the ESA does the court determine whether the fee would be

authorized pursuant to EAJA." *Oregon Nat. Desert Ass'n v. Vilsack*, 2013 WL

3348428, at *2 (D. Or. 2013); *see also Savage*, 2019 WL 3293425, at *5 (citation

omitted) ("Generally, there is no need to conduct an independent EAJA analysis

where, as here, fees are authorized under the ESA.")

**B.  Although an EAJA analysis is unnecessary in this case, Plaintiffs also qualify for an award of attorneys' fees under EAJA.**

As noted above, fees for all claims in this case may be awarded under the

ESA's "whenever appropriate" standard in conjunction with the *Ibrahim* "common

course of conduct" test; therefore an EAJA analysis is unnecessary.  *Vilsack*, 2013

WL 3348428, at *2; *Savage*, 2019 WL 3293425, at *5.  Nonetheless, if the Court

elects to undertake an EAJA analysis, Plaintiffs also qualify for fees for all claims

under EAJA.

The Supreme Court holds: "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163–65 (1990). In *Jean*, the Supreme Court quoted the House and Senate Committee Reports at length:

> adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate . . . . Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their right.

496 U.S. at 165 n.14 (*quoting* S.Rep. No. 96–253, p. 7 (1979) and H.R.Rep. No. 96–1418, p. 12 (1980)).(1991). Therefore, "removing disincentives to adjudication when the Government acts unreasonably both vindicates individual rights and curbs governmental excesses." *Id.*

Accordingly, EAJA must be read and applied in a manner that is consistent with its purpose "to diminish the deterrent effect of seeking review of . . . governmental action[.]" *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989). In line with such a reading, the Ninth Circuit has "acknowledged that the policy goal of EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." *Li v. Keisler*, 505 F.3d 913, 918 (9th

Cir.2007)

"The Government's general interest in protecting the federal fisc [] is

subordinate to the specific statutory goals of encouraging private parties to

vindicate their rights and [] curbing . . . the unreasonable exercise of Government

authority." *Jean*, 496 U.S. at 163–65.  The Supreme Court has repeatedly

reaffirmed these considerations:  "EAJA's purposes are clearly stated. . . . the high

cost of legal assistance and the superior resources and expertise of the Federal

Government precluded private parties from challenging or defending against

unreasonable governmental action. []. Fee awards were intended to address this

problem [.]" *Ardestani v. I.N.S.*, 502 U.S. 129, 142 (1991).

EAJA provides that a court "shall" award attorneys' fees to an eligible

"prevailing party" in a civil action brought against the United States "unless the

court finds that the position of the United States was substantially justified or that

special circumstances make the award unjust."   28 U.S.C.§ 2412(d)(1).  "Once a

party's eligibility has been proven, an award of fees under EAJA is *mandatory*

unless the government's position is substantially justified or special circumstances

exist that make an award unjust."  *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir.

1991)(emphasis added).  In other words, "EAJA creates a presumption that fees

will be awarded unless the government's position was substantially justified."

*Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir. 1988).

**1. Plaintiffs are eligible prevailing parties.**

Eligible parties under EAJA include 501(c)(3) tax exempt organizations with fewer than 500 employees at the time the action was filed.  28 U.S.C. § 2412 (d)(2)(B).  Both Plaintiffs meet this requirement and are therefore eligible parties. Declaration of Michael Garrity ¶2 (June 15, 2020).

Additionally, Plaintiffs are prevailing parties.  As discussed above, Plaintiffs have prevailing party status on both the programmatic (lynx) and site-specific (wolverine) ESA consultation claims.  In addition, this Court also entered summary judgment in Plaintiffs' favor regarding its NFMA claim:

> In arguing that the Forest Plan requires that two-thirds dense coverage be maintained for the portion of each elk analysis unit that falls on Gallatin National Forest lands, Defendants advance an interpretation that is not supported by the text. The language of the Forest Plan instructs that coverage be assessed across the "elk analysis unit."  The Forest Service's calculation of elk hiding cover violates NFMA because it fails to comply with the Forest Plan.
> . .
> Because the language of the plan unambiguously instructs that hiding cover be calculated for the elk analysis unit, the Forest Service's decision to calculate elk hiding cover for only a portion of each elk analysis unit was arbitrary and capricious and violates NFMA.

Doc. 85 at 31-33.  Under Supreme Court precedent, Plaintiffs are "indisputably [] prevailing part[ies], because [they] secured an enforceable judgment on the merits." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)(*quoting Buckhannon*, 532 U.S. at 603–04)(internal brackets and quotation marks omitted).

Accordingly, because Plaintiffs are eligible and prevailing parties, "an award of fees under EAJA is mandatory unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

**2.  The government's position was not substantially justified.**

"For its action to be substantially justified, the government must make a 'strong showing' that its position was substantially justified." *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 712 (3rd Cir. 1983))(citation omitted).  The Forest Service cannot make this "strong showing" in this case.  In *Savage*, this Court found that the Forest Service's failure to comply with its own Forest Plan was not substantially justified:

> The Forest Service does not dispute that Alliance is a prevailing party under the EAJA for the NFMA claim. []  Rather, it argues that its position was substantially justified and that a fee award is therefore inappropriate. []. . . .[ The Court] cannot square the substantial justification standard with the Ninth Circuit's finding that authorization of road activity within the Tobacco BORZ was arbitrary and capricious and therefore in violation of the NFMA.

> If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion. []. Alliance prevailed in its argument that the authorization of road construction and reclassification violated NFMA because it was inconsistent with an unequivocal Forest Plan provision. []. The Forest Service has not proven that th[e] the regulation it violated was ambiguous, complex, or required exceptional analysis. [].

*Savage*, 2019 WL 3293425, at \*5–6 (internal citations, quotation marks, and

brackets omitted).

In this case, regarding the NFMA claim, this Court held: "the language of the

plan unambiguously instructs that hiding cover be calculated for the elk analysis

unit, the Forest Service's decision to calculate elk hiding cover for only a portion of

each elk analysis unit was arbitrary and capricious and violates NFMA."  Doc. 85 at

33.  Thus, here as in Savage, the Forest Service violated an unambiguous Forest

Plan standard, and therefore its position cannot be substantially justified.  *See*

*Savage*, 2019 WL 3293425, at \*5–6.

Additionally, with respect to the ESA consultation claims, the Ninth Circuit

has long held that a failure to prepare a BA cannot be substantially justified:

> We hold that in denying fees the district court abused its discretion
> because as a matter of law the government's underlying conduct and
> its litigation position with respect to ESA and NEPA were not
> substantially justified. First, with respect to ESA, our court held that
> the Forest Service's failure to prepare a biological assessment of the
> effect of the road on protected species prior to its decision to build it
> was a *substantial violation* of ESA, 16 U.S.C. § 1536(c)(1) . . . .
>
> Thus, our unequivocal reversal on ESA issues strongly indicates that
> in this case both the government's underlying conduct—the failure to
> prepare a biological assessment—and its litigation position—that the
> failure to do so was merely a technical violation of ESA—were not
> reasonable.
>
> The government argues that its position with respect to ESA was
> reasonable because the Forest Service prepared a biological evaluation
> before the district court issued its opinion on the merits and that this

14

> court remanded to the district court to consider whether the evaluation
> was sufficient under ESA. However, the biological evaluation was not
> prepared prior to the Forest Service's decision to build the road as
> ESA requires and was never entered into the record. The fact that a
> biological evaluation was prepared after the decision to build the road
> and after the initiation of the suit further indicates that the government's
> underlying conduct and litigation position were not reasonable.

*Thomas v. Peterson*, 841 F.2d 332, 335–36 (9th Cir. 1988).

The same is true here.  The Forest Service's refusal to prepare a BA

for lynx for Amendment 51 prior to implementing it, and the Forest Service's

refusal to prepare a BA for wolverine for the Project prior to signing the

Project decision "indicates that the government's underlying conduct and

litigation position were not reasonable."  *Id.*

### 3.  There are no special circumstances here that would render an award unjust; instead, a fee award is consistent with the policy behind EAJA.

Finally, the agency bears the burden of proving any special circumstances

that would make a fee award unjust.  *Love,* 924 F.2d at 1495.  Here, Plaintiffs are

unaware of any special circumstances that would make a fee award unjust.  Instead,

Plaintiffs' request is in line with the purpose and intent of EAJA: "the specific

purpose of the EAJA is to eliminate for the average person the financial disincentive

to challenge unreasonable governmental actions." *Jean*, 496 U.S. at 163–64.

## C.  Plaintiffs' requested rates are reasonable.

"The most useful starting point for determining the amount of a reasonable

fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is also referred to as the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Similarly, "[t]here is no statutory cap on fees under the ESA.  Instead, fees are calculated according to the lodestar." *S. Yuba River Citizens League v NMFS*, 2012 WL 1038131 at *2 (E.D. Cal. 2012).

Plaintiffs have calculated this "lodestar" amount.  *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992).  There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee." *Id.* at 561. This is especially true in cases involving the vindication of the public interest, such as this case.  *City of Riverside v. Rivera*, 477 U.S. 561, 572 (1985).

To determine reasonable rates, "[t]he court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation; it may not refer to the rates actually charged to the prevailing party. . . . Rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Natural Resources Defense Council v. Babbitt*, 1994 WL 361811 *7-8 (N.D. Cal. 1994); *see also S. Yuba*, 2012 WL 1038131 at *6.

In 2019, this Court issued two orders that determined reasonable rates for Plaintiffs' counsel.  In the first order, this Court first determined a reasonable rate

for Mr. Bechtold:

> Mr. Bechtold is a highly skilled attorney who possess[es] considerable
> expertise in environmental litigation. Mr. Bechtold graduated from
> Harvard with a concentration in biology and focus in ecology. He
> received an M.S. in Environmental Studies where he specialized in
> public land use and policy. While in law school, Mr. Bechtold served
> as an editor of the Public Land and Resources Law Review and
> published an article on the listing of the bull trout under the
> Endangered Species Act. He graduated in 2000 with high honors. And
> in the 19 years since graduation, Mr. Bechtold has built a successful
> practice in environmental litigation. He has appeared before the Court
> on numerous occasions, many of them with Ms. Smith as co-counsel.
> . . .
> the Court recognizes a 2018 hourly rate of $340 as fair and consistent
> for an attorney of Mr. Bechtold's caliber.

*Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *4 (D. Mont. 2019).

Next, the district court determined a reasonable rate for Ms. Smith:

> The Court has already determined that an hourly rate of $340 for work
> performed by an experienced and highly capable environmental
> attorney in the handling of a complex matter is reasonable. Therefore,
> $340 is a fair rate for Ms. Smith assuming that she is an attorney of
> "comparable experience, skill and reputation."

> Having reviewed Ms. Smith's qualifications along with the Court's
> knowledge of Ms. Smith from her previous appearances, the Court is
> convinced that she is deserving of a competitive rate. Ms. Smith holds
> a graduate degree in Environmental Studies and a J.D. with a
> certificate in Environmental Law. During law school, Ms. Smith was
> an editor of the Public Land and Resources Law Review, a member of
> the National Moot Court Team, and published three scholarly articles
> on environmental policy issues. Not only did she graduate with high
> honors, but Ms. Smith was class valedictorian. Now, a decade into
> private practice, Ms. Smith is a sought-after litigator with extensive
> courtroom experience.

> . . .
> Ms. Smith . . . is now a decade into her career and from the Court's
> evaluation of her work, she has obtained significant expertise.
> In evaluating an attorney's experience, the Court considers not only
> Ms. Smith's experience as an environmental litigator and leading
> attorney at her firm, but it considers the crucial role Ms. Smith played
> in this litigation and the value she brings her clients as a "highly
> effective" oral advocate.

*Id.* at *5.

Several months later, this Court issued a fee order in a different case and

held:

> A generalist could not have litigated this case with the same degree of
> success; and a gifted but inexperienced environmental lawyer would
> have spent significantly more time preparing this case. Smith and
> Bechtold have substantial experience in environmental litigation, and
> "knowledge [and] specialized skill" such as theirs is essential for
> complex, technical cases such as this.
> . . .
> Both Smith and Bechtold are excellent, experienced environmental
> litigators. . . . solidly in the prime of their careers and operating at the
> highest level of public interest environmental litigation in Montana.

*Savage*, 2019 WL 3293425, at *6–7.

Based upon this analysis, this Court held that both Smith and Bechtold have

a reasonable market rate of $340/hour in district court in 2018, $350/hour in district

court in 2019, and a reasonable annual increase of $10/hour.  *Id* at *7.  Therefore,

in this fee motion, Smith and Bechtold request these reasonable market rates with

an annual increase of $10/hour:  $340/hour for 2018 district court hours, $350/hour

for 2019 district court hours, and $360/hour for 2020 district court hours.

Declaration of Timothy Bechtold ¶¶11-12 (June 15, 2020); Declaration of Rebecca K. Smith ¶¶9 (June 15, 2020).  Smith and Bechtold's distinctive skills were "not [] available elsewhere at the statutory rate." *Love*, 924 F.2d at 1495.  The high-quality legal representation was not otherwise available elsewhere to Alliance at statutory rates and could not have been provided by local general practitioners. Garrity Declaration ¶¶ 4-7.  The ultimate success in this case would not have happened without counsel's specialized knowledge, expertise, and skill in environmental law. Garrity Declaration ¶¶ 4-7.

Additionally, the requested rates for Ms. Akland are also reasonable.  Ms. Akland's rates are based on a $10/hour increase for each year in practice, starting with the 2014 EAJA rate.  Declaration of Kristine M. Akland ¶ 7 (June 15, 2020). Thus, she requests $220/hour in 2017, $230/hour in 2018, $240/hour in 2019, and $250/hour in 2020.  *Id.*

Finally, in light of the Ninth Circuit Appellate Commissioner's recent order, Plaintiffs request market rates for work performed on this fee motion.  In May 2020, the Appellate Commissioner held that it is more reasonable and consistent with EAJA to award counsel's market rate for all tasks, rather than awarding different fee rates for different tasks:

> USFS contends that Greenpeace should be compensated at the EAJA statutory rate for preparing the fee pleadings, because the Greenpeace attorneys are not experts in attorneys' fees and EAJA litigation is not a

recognized field for an enhanced rate. This contention lacks merit.
. . .
The approach of using different hourly rates for different portions of
the litigation may be within the discretion of the court, as USFS's
citations suggest, but this court has not adopted the approach as
necessary or advisable. Furthermore, as Greenpeace notes in response
to USFS's argument, applying different hourly rates to different parts
of an EAJA litigation is contrary to the Supreme Court's instruction
that "the EAJA--like other fee-shifting statutes--favors treating a case
as an inclusive whole, rather than as atomized line-items." *Jean*, 496
U.S. at 161-62.

In general, applying different hourly rates to different aspects of a
litigation risks turning the fee award proceedings into a second major
litigation, contrary to the Supreme Court's admonition in *Hensley*. *See
Hensley*, 461 U.S. at 437. As a practical matter, the atomized
approach to determining hourly rates that USFS proposes would
require the court to assess the difficulty of different tasks, determine
the level of expertise required at different stages of the litigation, and
hypothesize the appropriate hourly rate for the tasks and stage of the
litigation. This approach would be unwieldy and time-consuming.

A more reasonable approach, which is also consonant with settled
caselaw, is to determine if the hours expended are reasonable for
different tasks in the litigation for the attorneys at their market rates. . .
. Adhering to the "lodestar" method avoids determining whether the
attorney working on a particular task is overqualified for the labor and
should be compensated at varying hourly rates. .. . USFS's contention
lacks merit and Greenpeace's attorneys *will be compensated at their
market rates for reasonable hours expended during all stages of the
proceedings, including the fee litigation.*

*Greenpeace v. Stewart*, 2020 WL 2465321, at *5–6 (9th Cir. May 12, 2020)

(emphasis added).  Accordingly, Plaintiffs request compensation for counsel "at

their market rates for reasonable hours expended during all stages of the

proceedings, including the fee litigation."  *Id.*

20

**D. Plaintiffs' requested hours are reasonable.**

The Supreme Court holds: "absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action. . . . EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.  The hours expended on this case were not incurred on unreasonably dilatory conduct, but instead on reasonable and necessary tasks.  Smith Declaration ¶¶ 10-12; Bechtold Declaration ¶¶ 13-15; Akland Declaration ¶¶ 8-9.  Regarding the number of hours reasonably expended,"[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time [s]he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Counsels' "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required." *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).

As the D.C. Circuit has explained, "[t]he key question is whether the work was reasonably done in pursuit of the ultimate result.  In other words, would a private attorney being paid by a client reasonably have engaged in similar time expenditures?" *Goos v. National Ass'n of Realtors*, 68 F.3d 1380, 1385-1386 (D.C. Cir. 1995); *see also Woods v. Graphics Communications*, 925 F.2d 1195,

1207 (9th Cir. 1991).  As noted above, the Ninth Circuit Appellate Commissioner recently held: "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace*, 2020 WL 2465321, at *8 (citation omitted).  In other words – how would a reasonable attorney act during litigation? If counsel reasonably undertook a task during litigation, the time expended on that task is compensable, even if "the 20/20 vision of hindsight" now shows that counsel was ultimately unsuccessful.  *See Graham*, 490 U.S. at 396; *Greenpeace*, 2020 WL 2465321, at *8.

Consistent with this standard, last year the *en banc* Ninth Circuit held: "We do not require commonality of *both* facts *and* law to conclude that claims are related. [] Rather 'the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Ibrahim*, 912 F.3d at 1174-77. Thus, "[t]he fact that one claim or theory is eventually determined to be true does not mean that the claims were unrelated to one another." *Id.*  The Court explained that work on all related claims should be compensated because "[b]efore the litigation begins and while it is ongoing, the plaintiff and her lawyers cannot know for sure why someone else did something, but may, as here, have evidence suggesting various possibilities. So, as here, the plaintiff raises alternative claims and theories as to why something was done, some of which may be ultimately

22

inconsistent, with regard to a single set of facts." *Id.*

In this case, all claims meet the *Ibrahim* test because all claims involved the

same course of conduct, and were therefore related, because all claims challenged

the Gallatin Forest Plan and North Hebgen Project. *See Ibrahim*, 912 F.3d at 1171.

As this Court held in *Savage:* "all of Alliance's claims challenged the same action

by the Forest Service, and they are accordingly sufficiently related to one another

for a full award." 2019 WL 3293425 at *6. In another similar case, this Court

found: "Plaintiffs' claims contain a common core of facts because they allege

improper compliance with various environmental laws in the Forest Service's

authorization of the Plan and Project." *Native Ecosystems Council v. Krueger,*

2019 WL 1489839, at *3 (D. Mont. 2019). In another similar case, this Court

found:

> The common core of facts in this case is Defendants' approval of the
> Cabin Gulch timber sale project, and the legal claims brought forth
> under the APA, NEPA, NFMA, and the ESA are within the same legal
> framework commonly applied to environmental litigation. To view the
> scope of the facts here any more narrowly would violate the intent of
> the EAJA of eliminating the financial disincentive of challenges to
> questionable governmental conduct.

*All. for Wild Rockies v. Krueger*, 2014 WL 46498, at *4 (D. Mont. 2014).

Accordingly, this Court has emphasized that "[a]ttorneys are not required to

bill on a claim by claim basis, nor is the Court required to parse through Plaintiffs'

billing statements in an effort to determine how much time was spent on each

claim." *Id.*   Courts need not and should not be asked to engage in an "hour by hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

In order to determine whether the number of hours expended is reasonable, plaintiff's counsel "should identify the general subject matter of [her] time expenditures." *Hensley*, 461 U.S. at 437 n.12.  In identifying the subject matter, counsel "is not required to record in great detail how each minute of [her] time was expended." *Id*.  Rather, the test is whether the hours were "reasonable." *City of Riverside*, 477 U.S. at 570 n. 4.  To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id*.  "Normally [an award of attorneys fees] will encompass all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435.  The award of fees includes time spent by prevailing parties on their fee petitions. *See Love v. Reilly*, 924 F.2d 1492, 1497 (9th Cir. 1991).

In successfully prosecuting this case, Plaintiffs' attorneys expended reasonable hours engaged in normal and justified tasks associated with careful, conscientious prosecution of a lawsuit against an agency that vigorously defended its actions under an extensive administrative record.  In compiling these totals, Plaintiffs' attorneys carefully reviewed their contemporaneous time entries to ensure that no hours were excessive, redundant, or otherwise unnecessary. *See Hensley*,

24

461 U.S. at 433-34; Smith Declaration ¶¶ 10-12; Bechtold Declaration ¶¶ 13-15; Akland Declaration ¶¶ 8-9.  Therefore, fees are warranted for all hours incurred in this case.

## E.  Others costs and expenses should be awarded.

Plaintiffs seek reimbursement for normal litigation costs/expenses incurred in this case.  Concurrent with the filing of this motion, Plaintiffs submit a Bill of Costs on Form AO 133 for the filing fee, service, and printing, which amounts to $492.10.  *See* Smith Declaration ¶16 and Attachment A.  Additionally, Plaintiffs seek normal litigation expenses that are not addressed in a Bill of Costs, including postage for the 60-day notices ($43.00). Smith Declaration Attachment A.  Litigation expenses may be awarded when a statutory fee provision awards costs.  *Grove v. Wells Fargo Financial,* 606 F.3d 577, 579-582 (9th Cir. 2010).  Accordingly, Plaintiffs seek $535.10 in costs and other expenses.

## III.  CONCLUSION

In conclusion, Plaintiffs respectfully requests the following:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| **SMITH** |  |  |  |
| 2018 District Court | $340 | 165.6 | $56,304.00 |
| 2019 District Court | $350 | 66.8 | $23,380.00 |
| 2020 District Court | $360 | 64.5 | $23,220.00 |

| | | | TOTAL | $102,904.00 |
|---|---|---|---|---|
| **BECHTOLD** | | | | |
| 2018 District Court | $340 | 53.5 | | $18,190.00 |
| 2019 District Court | $350 | 8.6 | | $3,010.00 |
| 2020 District Court | $360 | 14.1 | | $5,076.00 |
| | | | TOTAL | **$26,276.00** |
| **AKLAND** | | | | |
| 2017 District Court | $220 | 7.1 | | $1,562.00 |
| 2018 District Court | $230 | 24.3 | | $5,589.00 |
| 2019 District Court | $240 | 7.4 | | $1,776.00 |
| 2020 District Court | $250 | 3.0 | | $750.00 |
| | | | TOTAL | **$9,677.00** |
| **BILL OF COSTS** | | | | **$492.10** |
| **OTHER EXPENSES** | | | | **$43.00** |
| **GRAND TOTAL** | | | | **$139,392.10** |

In *Ibrahim*, the Ninth Circuit held: "[a] full award of attorneys' fees here is consistent with the EAJA's goal of creating a level playing field in cases in which there is an imbalance of power and resources."  91 F.3d at 1179–80.  The same is true in this case.  Moreover, Plaintiffs note that their fee request in this case represents a fraction of the fees normally awarded in similar cases.  *See e.g. South Yuba*, 2012 WL 1038131 ($1,875,951.20 awarded); *Federation of Fly Fishers v. Daly*, 200 F.Supp.2d 1181, 1193 (N.D. Cal.2002) ($310,973.81 awarded).

For all of these reasons, Plaintiffs respectfully request that the Court grant this motion for $139,392.10 in fees and costs/expenses.

Respectfully submitted this 15th Day of June, 2020.

*/s/ Rebecca K. Smith*
REBECCA K.  SMITH
Public Interest Defense Center, P.C.
Attorney for Plaintiffs

27

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 6,478 words, excluding

the caption, Table of Contents, Table of Authorities, Index of Exhibits, signature

blocks, and certificate of compliance.

/s/ Rebecca K. Smith
Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, P.C.
Attorney for Plaintiffs